## WILLIAM LYALL SHIPBUILDING CO. v. UNITED STATES.

### THE CAP NORD.

Circuit Court of Appeals, Second Circuit. April 1, 1929.

No. 190.

Charles H. Tuttle, U. S. Atty., and Horace M. Gray, both of New York City, Sp. Asst. U. S. Atty.

Chauncey I. Clark, Stanley R. Wright, and Burlingham, Veeder, Fearey, Clark & Hupper, all of New York City, for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

PER CURIAM. Substantially all the proof in this case was by deposition, and we are therefore as free as the learned trial judge to deal with the evidence. The case turns wholly upon questions of fact. The Cap Nord argues that, although she yawed in the tide and moved forward and to port into collision, she did not have her engine connected with her propeller, and that her movement was involuntary and not a fault. On the other hand, she contends that the Kehuku, in coming to anchor within 200 feet of her, gave her a foul berth, which directly caused the collision. The Kehuku maintains that the movement of the Cap Nord could not have been due to the tide and wind, but must be attributed to the fact that her port engine, which was in operation, was connected with her propeller; that, even if the berth was foul, it was not a cause of the collision, since the vessels had already cleared each other on three changes of tide.

We find the facts to be as follows: The collision occurred during an ebb tide of about 1½ miles an hour, which runs true. The wind was from the southwest, and did not exceed 13 miles an hour; it is apparent that the higher velocity of 26 miles, recorded at between 4 and 5 p. m., did not exist at noon. The Kehuku lay ahead of the Cap Nord and to port of her, so that about 300 feet separated the former's stern from the latter's bow; but how far the projection of their headings were separated it is impossible to say. At the time of the collision the Cap Nord had overridden her chain, which ran from her port hawsepipe, so that it then led abaft her beam. The Kehuku was tailing to her anchor, true to the tide.

In such a situation, it seems to us quite impossible that the Cap Nord should have collided through any influence of tide and wind. The wind we must certainly lay aside. The schooner's sails were furled, and she offered nothing to the wind but a freeboard of from 12 to 20 feet, and, being laden, she drew 17 feet of water. To suppose that a wind of 13 miles, even if abeam, and it was rather on her quarter, could have made her actually override her chain, so that it led aft, seems to us inconceivable. There are, indeed, tricks of the tide; but we are not advised that at that time and place there were any which could so move one of two vessels, and leave untouched the other, which lay near at hand, and drew less than 10 feet more.

If, however, her port engine had been connected with her port propeller, it would have been easy for this to happen. Nearly all the witnesses of the Kehuku swore that they saw quick water at her stern, which, while we are aware enough of the unreliability of such testimony, cannot be disregarded as against the witnesses of the Cap Nord, who say that her propeller was not in motion. There were two men in the engine room, the chief engineer, a Brazilian, and an assistant, who had come on board the day before, and had had no experience with this kind of vessel until the 13th. The port engine had been running for about an hour, and a part of the chief engineer's testimony indicates that it was still running at the time of the collision.

Moreover, it is not altogether certain that he was not on deck at the time of the collision; at least, he went up four or five times during the morning. If so, it was by no means impossible that the green hand left below might have slipped in the clutch, perhaps unintentionally. Be that as it may, the situation is such as to make the balance of probabilities in favor of disregarding the evidence of these two men. We can find no other explanation which fits so well with the indisputable facts as that for one reason or another the clutch was used. Indeed, the very evidence that it was being repaired agrees with, rather than forbids, that conclusion.

Decree reversed; decree for the respondent upon both libel and cross-libel. Because of delay, three years' interest will be deducted from the recovery.